UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| NATALIE JEAN MAXWELL, ) | Case No. 10-20674-659 |
| ) | Judge Kathy A. Surratt-States |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| JOHN DUSTIN CRAGEN, ) | **Adversary No.11-2003-659** |
| ) | |
| ) | **PUBLISHED** |
| Plaintiff, ) | |
| ) | |
| -v- ) | |
| ) | |
| NATALIE JEAN MAXWELL, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The matter before the Court is the Complaint to Deny Discharge, Debtor-Defendant's Answer to Plaintiff's Complaint to Deny Discharge Presenting an Affirmative Defense, Debtor-Defendant's Motion for Summary Judgment, Debtor-Defendant's Memorandum in Support of Motion for Summary Judgment, Statement of Uncontroverted Material Facts, Plaintiff's Suggestions in Opposition to Debtor-Defendant's Motion for Summary Judgment and Affidavit of Plaintiff John Dustin Cragen. The matter was taken as submitted. Upon consideration of the record as a whole, the Court issues the following **FINDINGS OF FACT**:

On or about November 28, 2006, Debtor-Defendant Natalie Jean Maxwell (hereinafter "Debtor") was diagnosed with genital condyloma (commonly known as genital warts), a sexually transmitted disease which resulted from human papilloma virus (hereinafter "HPV"). Debtor was previously examined by her gynecologist, Dr. David W. Moreton on or about August 22, 2006 at which time Debtor did not show signs of HPV or genital condyloma.

Plaintiff John Dustin Cragen (hereinafter "Plaintiff") and Debtor became romantically involved in or about June of 2005. Plaintiff and Debtor lived together. One day in February 2007, Plaintiff noticed a "skin condition on his genitals." Plaintiff's Suggestions in Opposition to Debtor-Defendant's Motion for Summary Judgment (hereinafter "Plaintiff's Suggestions") ¶ 2. Plaintiff alleges that at that time, Plaintiff informed Debtor of the skin condition, at which time, Debtor stated that she had a similar condition that she was "trying to get rid of…with the assistance of physicians." Plaintiff's Suggestions ¶ 3. Thereafter, Plaintiff was diagnosed by his physician with HPV. Plaintiff's Suggestions ¶ 4. Plaintiff alleges that Debtor was his only romantic partner from the Summer of 2005 through March of 2007. As such, Plaintiff believes he is certain that he contracted HPV from Debtor. Plaintiff and Debtor's relationship ended in or before March 2007.

Plaintiff threatened to file a civil action against Debtor for intentionally giving him HPV. Plaintiff's Suggestions ¶ 8. Rather than face civil action, on or about August 4, 2007, Debtor executed and delivered a Promissory Note to Plaintiff in which Debtor agreed to pay Plaintiff the sum of $35,000.00, without interest. Under the terms of the Promissory Note, Plaintiff was also entitled to reasonable attorney's fees if the matter was placed in the hand of an attorney for collection. The $35,000.00 was to be paid in $100.00 monthly payments from August 30, 2007 until May 30, 2008, after which Debtor would make monthly payments of $350.00 until the remaining balance was paid in full. Plaintiff executed a Release in Full, in which Plaintiff agreed to fully release and forever discharge Debtor from any claims "sustained by or accruing to [Plaintiff] resulting from [Plaintiff] contracting a sexually transmitted disease" from Debtor. Complaint ¶ 6.

Debtor states that upon learning that she was diagnosed with HPV, she informed Plaintiff of her diagnosis and thereafter, she and Plaintiff continued to have consensual unprotected sexual relations. Debtor-Defendant's Answer to Plaintiff's Complaint to Deny Discharge Presenting an Affirmative Defense (hereinafter "Answer") ¶¶ 6-7; Debtor-Defendant's Memorandum in Support of Motion for Summary Judgment (hereinafter "Debtor's Memo") ¶¶ 25-26. Thus, Debtor states that

2

either both Debtor and Plaintiff were unaware of her diagnosis or they were both aware of her diagnosis when they engaged in sexual relations. Answer ¶¶ 6-7; Debtor's Memo ¶¶ 25-26.

On December 21, 2010, Debtor filed her Voluntary Petition for protection under Chapter 7 of the Bankruptcy Code. Plaintiff brought forth his Complaint to Deny Discharge in which Plaintiff alleges that Debtor willfully and intentionally gave Plaintiff HPV in that she engaged in unprotected sexual intercourse with Plaintiff without informing Plaintiff of her diagnosis. Debtor denies first that she had post-diagnosis unprotected sexual intercourse with Plaintiff without his knowledge of her diagnosis, and second that her actions rise to the level of willful and maliciousness. As such, Debtor has filed her Motion for Summary Judgment. In support of Debtor's Motion for Summary Judgment, Debtor's Exhibit B to Debtor's Memo is the affidavit of Dr. David W. Moreton. Dr. Moreton has been practicing with Women's Health Associates in Columbia, Missouri, for over ten years and is a member of the American College of Obstetricians and Gynecologists and the Missouri State Medical Association.

Doctor Moreton states the following: Genital condyloma are the result of HPV. HPV can be carried without any symptoms thus many people do not realize they are infected. HPV is a sexually transmitted disease. Because HPV can be asymptomatic, it is virtually impossible to determine the source of HPV.

## JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 151, 157, and 1334 (2011) and Local Rule 81-9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. §157(b)(2)(I) (2011). Venue is proper in this District under 28 U.S.C. § 1409(a) (2011).

## CONCLUSIONS OF LAW

The Court must decide whether the debt owed by Debtor to Plaintiff is excepted from discharge pursuant to Section 523(a)(6) where Debtor executed a promissory note for the sole

3

consideration of obtaining a release from any claims by Plaintiff associated with Plaintiff allegedly contracting a sexually transmitted disease from Debtor. The Court resolves the matter as follows.

"A motion for summary judgment proceeds under Rule 56 of the Federal Rules of Civil Procedure, made applicable in Bankruptcy proceedings by Rule 7056." *In re Gardner*, 220 B.R. 63, 64 (Bankr. E.D. Mo. 1998). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits…show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2550, 91 L. Ed. 2d 265, 273 (1986). The moving party has the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Id.* at 323. Once the movant satisfies this burden, the burden shifts to the non-moving party. *Id.* When ruling on a motion for summary judgment, a court must view all facts in a light most favorable to the non-moving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. *Robinson v. Monaghan*, 864 F.2d 622, 624 (8th Cir. 1989) (citing *Trnka v. Elanco Prods. Co.*, 709 F.2d 1223, 1224-25 (8th Cir. 1983)).

Debts arising from wilful and malicious injury by a debtor are excepted from discharge under Section 523(a)(6). 11 U.S.C. § 523(a)(6) (2011). Wilfulness and maliciousness are two distinct elements of Section 523(a)(6). *In re Patch*, 526 F.3d 1176, 1180 (8th Cir. 2008) (citing *In re Scarborough,* 171 F.3d 638, 641(8th Cir. 1999), *cert. denied,* 528 U.S. 931, 120 S.Ct. 330, 145 L.Ed.2d 258 (1999)). The Eighth Circuit Court of Appeals has set a high bar for certainty of harm regarding wilful and maliciousness for the purposes of Section 523(a)(6). *In re Adams*, 349 B.R. 199, 203 (Bankr. W.D. Mo. 2006) (citing *In re Hartley,* 869 F.2d 394 (8th Cir. 1989)(citations omitted)). To prove wilfulness, the creditor must show by a preponderance of the evidence that debtor intended the injury, not just a deliberate or intentional act leading to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998); *Grogan v. Garner,* 498 U.S. 279, 280, 111 S.Ct. 654, 655, 112 L.Ed.2d 755 (1991). Debts arising from recklessly or negligently

4

inflicted injuries do not fall within the compass of Section 523(a)(6). *Kawaauhau,* 523 U.S. at 64, 118 S.Ct. at 978. "If the debtor knows that the consequences are certain, or substantially certain, to result from his conduct, the debtor is treated as if he had, in fact, desired to produce those consequences." *In re Patch,* 526 F.3d at 1180. Thus, to prove wilfulness under Section 523(a)(6), Plaintiff is required to prove by a preponderance of the evidence either that Debtor desired for Plaintiff to contract HPV, or genital condyloma, as a consequence of Debtor's actions in having unprotected sexual relations with Plaintiff or that Debtor was substantially certain that Plaintiff would contract HPV, or genital condyloma, as a consequence of Debtor and Plaintiff having unprotected sexual relations. The nature of HPV prevents a conclusion in the affirmative.

At least four bankruptcy courts have been presented with a similar matter: *In re Moffitt, In re Jaquis, In re Hanson* and *In re L.F.S..* The prevailing issue in *In re Moffitt* was whether a prior judgment for intentional infliction of emotional distress which involved the plaintiff's contraction of HPV from her debtor/ex-husband would be excepted from discharge. The Sixth Circuit Bankruptcy Appellate Panel determined that the District Court judgment in favor of the plaintiff was *res judicata* and thus, the plaintiff's claim in the amount of the judgment was excepted from discharge. *In re Moffitt,* 252 B.R. 916 (B.A.P. 6th Cir. 2000). Similarly, in *In re Jaquis,* the debtor's ex-wife was precluded from bringing forth a non-dischargeable claim for wilful and malicious injury as a result of the debtor allegedly causing his ex-wife to contract genital herpes because debtor's ex-wife failed to make any allegations concerning the same in the parties' state court divorce proceedings. *In re Jaquis,* 131 B.R. 1004 (Bankr. M.D. Fla. 1991).

In *In re Hanson,* the debtor engaged in a romantic relationship with the plaintiff from July 1990 to October 1990. 171 B.R. 869, 871-72 (Bankr. D. Minn. 1994). During that time, debtor was aware that he had HPV but did not inform the plaintiff nor did he use protection when engaging in sexual intercourse with the plaintiff. *Id.* The plaintiff contracted HPV, and the court determined that debtor was the source of plaintiff's HPV. *Id.* at 873. The Plaintiff's claim against debtor was

5

excepted from discharge pursuant to Section 523(a)(6). *Id.* at 874. Contrastingly, in *In re L.F.S.,* the plaintiff argued that her claim against the debtor, her ex-husband, for infecting plaintiff with genital herpes should be excepted from discharge under Section 523(a)(6). The plaintiff further testified that in her life, debtor was the only person with which she ever had sexual relations. *In re L.F.S.,*148 B.R. 897, 899 (Bankr. W.D. Mo. 1992). The plaintiff was diagnosed with herpes in June 1989, however, the debtor presented a blood test dated August 1989 which demonstrated that the debtor tested negative for herpes. *Id.* Ten months later in June 1990, the debtor tested positive for herpes. *Id.* While the court concluded that the plaintiff failed to meet her burden of proof, the court further noted that the plaintiff likely would not have prevailed because there was no evidence of the debtor's intent to injure the plaintiff, and that the "mere fact of transmission of the virus would not establish that defendant's acts were willful and malicious." *Id.* at 900.

      This Court concludes that the standard as articulated by the *court In re L.F.S* as to intent is the correct standard in the Eighth Circuit. First, Debtor did not know that she had HPV during the entirety of her relationship with Plaintiff, rather, she learned this information long after Debtor and Plaintiff's relationship began. In fact, Plaintiff and Debtor began to date in June of 2005 and Debtor was not diagnosed until November of 2006. Further, Debtor was fully examined by Dr. Morton on August 22, 2006 at which time she showed no signs of HPV or genital condyloma. Given the insidious and asymptomatic nature of HPV, neither the parties nor the Court will ever know the genesis of this disease as it relates to the parties. Moreover, as noted by Dr. Moreton, it is virtually impossible to trace the source of HPV. Therefore, while Plaintiff is convinced that he contracted the virus from Debtor, given that HPV is asymptomatic, the source of the HPV which Plaintiff has contracted is uncertain in that it is uncertain that Plaintiff contracted HPV from Debtor. Irrespectively, the record is devoid of any fact which tends to show that Debtor acted with the requisite wilfulness to cause harm to Plaintiff. Debtor and Plaintiff's relationship ended shortly after Plaintiff became aware of his diagnosis. The facts do not indicate that Debtor engaged in a

romantic relationship with Plaintiff with the intent of causing Plaintiff to contract HPV, nor does Plaintiff allege such wilfulness. Even if it could be scientifically proven that Debtor indeed caused Plaintiff to contract HPV, as articulated by the court in *In re L.F.S.,* without Debtor acting with the intent to do so, or acting with substantial certainty that Plaintiff would contract HPV, the wilfulness requirement of Section 523(a)(6) cannot be met. See *In re L.F.S.,* 148 B.R. at 900; but see *In re Hanson,* 171 B.R. at 873-74.

To prove malice, the plaintiff must prove debtor's conduct was specifically targeted at the plaintiff. *In re Madsen,* 195 F.3d 988, 989 (8th Cir. 1999) (citing *In re Long,* 774 F.2d 875, 881 (8th Cir. 1985)). Again, the record does not indicate that Debtor acted maliciously towards Plaintiff or that Debtor specifically targeted Plaintiff. As such, Plaintiff cannot meet his burden. Accordingly, by separate order, Debtor's Motion for Summary Judgment will be granted.

*Kathy A. Surratt-States*

KATHY A. SURRATT-STATES
United States Bankruptcy Judge

DATED: September 14, 2011
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO 63102

John Dustin Cragen
Ryan Bertels
718 East Liberty Street

James Arthur Clampitt
Clampitt Law Firm, PC
300 East Liberty, Suite 101
PO Box 987
Mexico, MO 65265

Ryan E Bertels
Hamlett & Bertels, L.L.C.
718 East Liberty Street
Mexico, MO 65265

Natalie Jean Maxwell
31067 Audrain Rd 9446
Laddonia, MO 63352